**DURASTEEL CO. v. GREAT LAKES STEEL CORP.**

No. 14751.

United States Court of Appeals
Eighth Circuit.

June 29, 1953.

Rehearing Denied July 20, 1953.

George C. Willson, III, St. Louis, Mo. (James S. McClellan, and Willson, Cunningham & McClellan, St. Louis, Mo., on the brief), for appellant.

John O. Hichew, St. Louis, Mo. (Harold I. Elbert and Thompson, Mitchell, Thompson & Douglas, St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and SANBORN and JOHNSEN, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellant to recover $575,000.00 as damages for the alleged breach of two contracts for the purchase and sale of certain steel. We shall hereafter refer to the parties as they were designated in the trial court. It was alleged in the complaint that late in 1945 and early in 1946 the parties hereto entered into two contracts by means of purchase orders duly assented to by defendant for the delivery to plaintiff by defendant of 2,035 tons of carbon steel and 4,565 tons of Hi Tensil steel; that although the contracts did not specify a definite time for deliveries it was implied that delivery would be made within a reasonable time; that defendant delivered and plaintiff accepted and paid for 915 tons of carbon steel and 2,100 tons of Hi Tensil steel; that defendant repudiated the Hi Tensil steel contract on April 10, 1947 and that it refused to complete the carbon steel contracts although requested so to do.

Defendant by answer admitted the execution of the contracts but denied their breach. For further answer it alleged that on September 16, 1948, plaintiff agreed in writing that all prior orders, with one exception not here material, should be cancelled and superseded in consideration of defendant's accepting certain new purchase orders; that thereafter shipments were made under said new purchase orders until August 18, 1949, when plaintiff requested in writing formal cancellation of all existing purchase orders it had with defendant without reserving a claim for any breach thereof, by reason of which defendant was relieved of any liability for the alleged breach of the contracts sued upon or any liability for their breach.

After the issues had been joined by the pleadings defendant interposed a motion for summary judgment in which it charged that the pleadings and affidavits on file showed that there was no genuine issue as to any material fact and that defendant was entitled to judgment as a matter of law. It was alleged in the motion that the contracts for the breach of which the action was brought were on September 16, 1948, by mutual agreement of the parties thereto cancelled and superseded by new contracts which as a matter of law then constituted the only contracts between the parties and released the parties from the obligations of the contracts upon which the action was brought.

The motion further alleged that the new contracts were at plaintiff's request formally cancelled on August 18, 1949, without express reservation of claim for damages previously sustained. The allegations of the motion were supported by affidavits of defendant's officers.

In its opposition to the motion for summary judgment plaintiff urged that there was a genuine issue as to a material fact because no acknowledgments of the new orders of September 16, 1948, were received by it and hence no new contracts ever came into existence; that a genuine issue as to a material fact existed in that while it was the intention of the parties to readjust and compromise defendant's liability on the carbon steel contracts it was not the intention of the parties to adjust defendant's liabilities under the Hi Tensil steel contracts and

that even if the parties had entered into new contracts on September 16, 1948, plaintiff's request of August 18, 1949 for formal cancellation would not have constituted an implied waiver of damages for breach thereof. Plaintiff submitted affidavits of its officers supporting its assertion that no acknowledgments of the orders of September 16, 1948, were received by it.

The material facts disclosed by the pleadings, affidavits, and motion considered on defendant's motion for summary judgment may be stated as follows:

On September 16, 1948, plaintiff sent to the defendant through the mail a letter signed by its vice-president reading as follows:

"In consideration of the acceptance of purchase orders 9449 & 9450 for 675 tons of prime steel and 850. coil ends, we agree that all prior orders given to you, with the exception of our purchase order No. 5207, shall be cancelled and superseded."

This letter was received by defendant September 18, 1948. Defendant claimed that the orders referred to in this letter were acknowledged on the regular form used by defendant for accepting such orders for customers and that acknowledgment was mailed to plaintiff. Defendant by affidavit showed that 26 shipments of steel were made pursuant to purchase order 9450 and 5 shipments pursuant to purchase order 9449 and that plaintiff accepted and paid for all such shipments. Defendant's affidavits also showed that on several occasions plaintiff requested changes in shipping dates and size of steel on these purchase orders.

Thus on October 18, 1948, plaintiff wrote defendant as follows:

"Please refer to our Order No. 9449 and schedule 75 Tons, 22 Gauge Cold Rolled Sheets Commercial Quality 36″ x 96″ for December delivery, instead of 75 Tons of 20 gauge 48″ x 120″ as shown on the subject order.

"May we ask that you try to hold a maximum weight in one lift of 4,500 Lbs. and ship in low side drop end Gondola cars."

On October 21, 1948, defendant answered that letter stating that the suggested changes did not fit into its schedule "too well" with respect to width. In that letter defendant suggested that plaintiff consider something other than 36″ "preferably 40″ to 48″ or narrower in a range of 30″ to 35″." On October 28, 1948, plaintiff in response to defendant's letter of October 21, 1948, said in part:

"In reply to your letter of October 21st with respect to the December rolling portion of our order #9449, we wish to advise that while we would prefer this 22 gauge sheet 36″ x 96, we can accept this in 48″ wide material maintaining the length of 96″.

"We ask, therefore, that the material be rolled to this size."

There were various other exchanges of letters relative to making changes in sizes of material and dates of shipment which would seem to be cumulative in character.

In a letter dated August 18, 1949, plaintiff wrote defendant as follows:

"I feel that it would be advantageous to clear our files and therefore ask that you make formal cancellation of all the existing Purchase Orders we have with you. We are so marking our records as of this date. * * * We will appreciate your advising that all of our existing orders have been cancelled."

Defendant acknowledged this letter and agreed to cancel all the purchase orders placed with it by plaintiff.

The court expressing the view that the undisputed evidence showed as a matter of law that plaintiff had waived the alleged breach of the contracts forming the basis if its action when in 1948 it contracted for new orders for steel and paid for late shipments on said orders held there was no genuine issue of material fact involved and therefore entered summary judgment of dismissal.

On this appeal plaintiff contends (1) that whether defendant accepted plaintiff's offer for an accord and satisfaction was a material fact as to which there was a genuine issue; (2) that defendant's shipments of

steel without acknowledging the new purchase orders constituted a counter-offer rejecting plaintiff's offer for an accord; (3) that whether the cancellation of August, 1949, constituted an implied waiver of plaintiff's claim for breach of the contracts sued upon presented a material fact as to which there was a genuine issue.

A summary judgment should not be entered unless it clearly appears that there is no genuine issue as to a material fact. Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.; Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881; Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 189 F.2d 213; Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967. There may however, be a formal issue presented by the pleadings but shown by affidavit or otherwise not to be genuine. Hurd v. Sheffield Steel Corp., 8 Cir., 181 F.2d 269; Parmelee v. Chicago Eye Shield Co., 8 Cir., 157 F.2d 582, 168 A.L.R. 1130; Broderick Wood Products Co. v. U. S., 10 Cir., 195 F.2d 433; Dewey v. Clark, 86 U.S.App.D.C. 137, 180 F.2d 766. An issue of fact is not genuine unless it has legal probative force as to a controlling issue, 35 C.J.S., Federal Courts, § 144 p. 1205. The motion for summary judgment is not a trial of the issues but for the purpose of determining whether in fact there are any genuine issues as to material facts. If it is made clearly to appear on such a motion that even though there is an issue under the pleadings there is in fact no dispute as to the controlling material facts, then the court should enter summary judgment.

It appears without dispute that plaintiff on September 16, 1948, made a written offer to the defendant in the form of a letter the material parts of which are as follows:

"In consideration of the acceptance of purchase orders 9449 & 9450 for 675 tons of prime steel and 850 coil ends, we agree that all prior orders given to you with the exception of our purchase order No. 5207, shall be cancelled and superseded.

"We will very much appreciate your sending through the acknowledgments on these orders as quickly as possible and that you do everything possible to get the shipment to us as early as you can in September on order No. 5207 as this material is needed very badly."

It stands without dispute that this letter was received but plaintiff denies that defendant made formal acknowledgment of the orders thus made. For the purpose of determining the issues we shall assume, as did the trial court, that the letter was not formally acknowledged by defendant. It however likewise appears without dispute that defendant made shipments from time to time to plaintiff pursuant to these orders and that such shipments were received and paid for by plaintiff. This constituted part performance of these contracts. The letter did not by its terms make formal acceptance in writing a condition precedent to the effectiveness of the contracts. That the contracts were recognized as binding on the parties is indicated by the correspondence between them relative to requested changes of various sorts, either as to the size or character of steel, dates of shipment, or even to the destination of shipments. It is contended by plaintiff that there was a genuine issue in that plaintiff denied having received written acknowledgment of the orders. There was an issue as to this fact but we think it was not a material issue. The offer to cancel all prior orders which would include the orders forming the basis of this action was not conditioned on the receipt of a written acknowledgment. It is ingeniously argued by counsel for plaintiff that the offer contained in plaintiff's letter of September 16, 1948, was one of accord and satisfaction. The offer was to cancel all former contracts and the parties in effect substituted a new contract for the old. The distinction between the two doctrines is pointed out in Moers v. Moers, 229 N.Y. 294, 128 N.E. 202, 203, 14 A.L.R. 225, where the court in part said:

"A new executory contract between a claimant and the person charged, by which they reciprocally agree to do or not to do an act or acts not obligatory

by contract or law, which will affect a legal right of either, and which, expressly or through implication, includes the settlement of the original claim, is not a mere accord, but is the substitute for the original claim or contract, which is merged in it, and is, in and of itself, binding upon the parties. * * *"

The case of Western Military Academy v. Viviano, 235 Mo.App. 301, 133 S.W.2d 1098, which is relied upon by plaintiff is readily distinguishable. In that case it appeared that there was nothing in the agreement itself to show an intention on the part of the plaintiff to accept the mere promise or agreement of the defendant as satisfaction of the debt. In the instant case however, there was a positive and distinct agreement that "all prior orders * * * shall be cancelled." That was made a condition of acceptance of the new orders.

 The mere fact that the letter requested an acknowledgment simply suggested a usual method of acceptance but it did not preclude acceptance by part performance or otherwise. The request merely said, "We will very much appreciate your sending through your acknowledgments on these orders as quickly as possible." The agreement to cancel all prior orders was in consideration of the acceptance of the new orders. In Williston on Contracts, Vol. 1, page 220, the author says:

"* * * Care must be taken, however, in interpreting offers to make sure whether the offer does impose an absolute condition as to time, place, or manner of acceptance, or merely suggests a method which will be satisfactory to the offeror; and in determining the interpretation of an offer in this respect, as in other respects, it is frequently necessary to look beyond the literal meaning of the language used. If, for instance, an offer contains this language: 'if you wish to accept this offer, send your office boy with your note of acceptance before 12 o'clock,' and, instead of sending his office boy, the offeree takes a note of acceptance himself to the offeror within the specified time, it can hardly be doubted that a contract has been formed. The statement in regard to the office boy and the offer is merely a suggestion as to a convenient method of getting the answer to the offeror. Probably any mode of communication which reached the offeror before twelve o'clock would be sufficient. * * *"

The principle is treated in Restatement of Contracts, section 61:

"If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract. If an offer merely suggests a permitted place, time or manner of acceptance, another mode of acceptance is not precluded."

The Supreme Court of Wisconsin in Zimmerman Bros. & Co. v. First Nat. Bank of Stevens Point, 219 Wis. 427, 263 N.W. 361, 362, considered a contention that an offer had not been so accepted as to be binding because the offeror asked the offeree to accept by wire but instead the acceptance was by telephone. In the course of the opinion the court said:

"The first contention of the defendant is without merit. As the trial court correctly held, the request to wire at once was fully satisfied when the defendant called the plaintiff on the telephone, accepted the proposition, and followed that call by a letter confirming the transaction. No attempt was made by the defendant to make a new offer. Even if the term 'by wire' is interpreted to mean 'by telegraph,' the fact that the acceptance was by telephone confirmed by letter did not amount to a new offer as contended by the defendant and therefore no new acceptance was necessary."

In the instant case the request for written acceptance did not, we think, preclude some other method or means of accepting the offer.

 The offer here was accepted by part performance. The deliveries were made and accepted pursuant to these contracts and not otherwise. It is well settled that acceptance of an offer by part performance in accordance with the terms of

the offer is sufficient. Roberts v. Harmount Tie & Lumber Co., Mo.App., 264 S.W. 448; Williams v. Emerson-Brantingham Implement Co., Mo.App., 198 S.W. 425; Sheridan Coal Co. v. C. W. Hull Co., 87 Neb. 117, 127 N.W. 218; Haskell & Barker Car Co. v. Alleghany Forging Co., 47 Ind.App. 392, 91 N.E. 975; Wood & Brooks Co. v. D. E. Hewitt Lumber Co., 89 W.Va. 254, 109 S.E. 242, 19 A.L.R. 467; Belden Mfg. Co. v. Curtiss-Wright Airplane Co., 137 Kan. 840, 22 P.2d 494. In Roberts v. Harmount Tie & Lumber Co., supra, it was contended that there had been no proper acceptance of an offer to purchase and the defendant refused to accept and pay for the property in controversy on the ground that it was not bound to do so because plaintiff had not accepted the offer in writing. In the course of the opinion it is said [264 S.W. 449]:

"* * * But there are instances without number where performance has been considered as supplying mutuality. Discussing the subject of performance supplying mutuality, Page on the Law of Contracts, vol. 1, § 582, says:

"'If the contract is accepted by doing the act, no objection can be made to the contract upon the ground of want of mutuality. The same act amounts to acceptance, consideration, and performance. In terms of mutuality this is explained by saying that performance has eliminated the original want of mutuality, * * *.'"

In Williams v. Emerson-Brantingham Implement Co., supra, there was involved the question of the acceptance of an offer. After stating the general rule pertaining to acceptance by performance the court said [198 S.W. 428]:

"We would be inclined to think that part performance sufficient to show an unmistakable and positive intention to fully comply with the offer as made would be sufficient."

In Sheridan Coal Co. v. C. W. Hull Co., supra, the facts were in some respects strikingly similar to those in the case at bar. In that case plaintiff gave an order for coal which was not acknowledged as requested. Defendant however, made shipments in compliance with the order but at a time different from the schedule specified in the order. The Supreme Court of Nebraska in considering the effect of partial delivery under the circumstances recited among other things [87 Neb. 117, 127 N.W. 220]:

"* * * But what will constitute an acceptance depends frequently upon circumstances. A direct, unequivocal, written acceptance of an offer to purchase is satisfactory evidence of the fact, but, if the parties have not stipulated otherwise, the acceptance need not be in any particular form nor evidenced by express words; the delivery by the vendor of a part of the property referred to in the offer to buy, may take the place of words as proof of an acceptance."

In Haskell & Barker Car Co. v. Alleghany Forging Co., supra, an Indiana case, defendant pleaded a counterclaim based on failure of plaintiff to complete a contract for delivery of chains. In holding the counterclaim was demurrable the court said [91 N.E. 976]:

"Moreover, it is averred that a part of the chains had been shipped in compliance with the order. This shows that the appellee treated the order as accepted, and therefore for this additional reason the contract was completed and binding. * * *"

Here there can be no doubt that the shipments made by defendant were made pursuant to the orders numbered 9449 and 9450. They were known by plaintiff to have been so shipped and their acceptance bound the plaintiff to the terms of the contracts. As a part of the consideration for these contracts plaintiff agreed to cancel all prior contracts and the question of defendant's liability because of the alleged breach of the prior contracts presented only a question of law.

Having given undoubted validity to these second contracts by partial acceptance of deliveries made pursuant thereto, plaintiff cannot now be heard to

assert any rights which might have accrued to it under the original contracts. There was no reservation of any such rights when the contracts were for a valuable consideration mutually agreed upon, cancelled. But if it could be contended that the new contracts being substituted for the old were in the nature of a merger of two contracts and hence the liability arising under the old contracts inhered in the new, yet it appears without dispute that by mutual consent of the parties that while the new contracts had been partly completed they were cancelled without reserving to the plaintiff any cause of action for prior breach. On August 18, 1949, plaintiff wrote defendant as follows:

"I feel that it would be advantageous to clear our files and therefore ask that you make formal cancellation of all of the existing Purchase Orders we have with you. We are so marking our records as of this date. * * *

"We will appreciate your advising that all of our existing orders have been cancelled."

Responding to this communication defendant agreed to cancel all of the purchase orders placed with defendant by plaintiff. At that time the second set of contracts, which have been referred to as the new contracts, were only partly performed and plaintiff was obligated to accept and pay for all of the tonnages contracted for. As the contracts were executory as to their unfulfilled portions the parties were at liberty to cancel them without reserving a claim for damages. Having done so plaintiff relinquished all rights it might otherwise have had arising from a breach of any of the contracts. Sheetz v. Price, 154 Mo.App. 574, 136 S.W. 733; McNabb v. Kansas City Life Ins. Co., 8 Cir., 139 F.2d 591, 594; Williston on Contracts, sec. 1826. In McNabb v. Kansas City Life Ins. Co., supra, we had occasion to consider the question of the right of parties to an executory bilateral contract to terminate it by mutual agreement. In the course of that opinion we said:

"Under the law of both Missouri and Iowa, the executory portions of a contract, where bilateral obligations are involved, may validly be terminated by mutual consent or agreement without other consideration. * * *"

The rule is succinctly stated in Williston on Contracts, Volume 6, page 5170:

"If the parties to a bilateral contract agree to rescind or modify it, there is no difficulty in regard to consideration, whether the agreement to rescind is made before or after a breach of the original contract, so long as neither party has completely performed or been discharged from his obligation. The promise of one party to forego his rights under the contract is sufficient consideration for the promise of the other party to forego his rights."

As has been observed at the time of the request to cancel these contracts both parties thereto were obligated to fulfill the unperformed portions of the contracts. By the cancellation of these contracts each party was freed from that obligation.

There was no ambiguity in any of the contracts and we are clear that under the undisputed facts the action involved no genuine issue of material fact and hence the court correctly entered summary judgment of dismissal. The judgment appealed from is therefore affirmed.